UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-61564-CIV-MORENO/O'SULLIVAN

FEDERAL DEPOSITION INSURANCE
CORPORATION as receiver for INDYMAC.
F.S.B.,

      Plaintiff,

v.

CHICAGO TITLE INSURANCE COMPANY, as
successor in interest of TICOR TITLE
INSURANCE COMPANY,

      Defendant.

                    /

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court pursuant to the Defendant Chicago Title's

Motion for Summary Judgment and Supporting Memorandum of Law ("Def.'s Motion")

(DE# 44, 6/4/15); and the Plaintiff Federal Deposit Insurance Corporation as Receiver

for IndyMac Bank, F.S.B.'s Motion for Summary Judgment or Partial Summary

Judgment against Defendant Chicago Title Insurance Company ("Pl.s' Motion")(DE# 47,

6/4/15).  These matters were referred to the undersigned by the Honorable Federico A.

Moreno, United States District Judge.  (DE# 50, 6/22/15).  Having carefully reviewed the

applicable motions, responses, replies and the statements of fact and responses

thereto as well as the record evidence, the undersigned recommends that the

Defendant Chicago Title's Motion for Summary Judgment and Supporting

Memorandum of Law (DE# 44, 6/4/15) be GRANTED in part and the Plaintiff Federal

Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B.'s Motion for

Summary Judgment or Partial Summary Judgment against Defendant Chicago Title

Insurance Company (DE# 47, 6/4/15) be DENIED, as more fully explained below.

<u>INTRODUCTION</u>

The FDIC, as receiver of IndyMac Bank ("IndyMac"), filed this action in July of 2014 to recover losses under a Closing Protection Letter ("CPL") issued by the defendant's predecessor regarding two mortgage loans totaling $855,000 to Maria Segal  ("Segal Loans") for the purchase of property located at 604 Sunnyside Court, Fort Myers, Florida (the "Property") on August 21, 2007. On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver.

The parties agree that the FDIC was required to provide notice of their CPL claim within 90 days from the discovery of its claim of loss.  The FDIC alleges that it "first discovered the facts giving rise to its claim under the Segal CPL no earlier than April 3, 2014" and that the FDIC "provided ... written notice to Defendant by way of a claim letter ... which was delivered to Defendant no later than June 16, 2014." <u>See</u>  Second Amended Complaint ¶ 39 (DE# ); Claim Letter, Ex. 25 to Gomez Depo. (DE# 45, Ex. 5; 6/4/15); Pl.'s Mot. at n.1 (DE# 59, 7/2/15).  The FDIC's CPL claim letter did not provide details regarding the closing agent's alleged misconduct.  Instead, the letter stated that "[t]he FDIC-R's claims arise from the failure of Ticor's Closing Agent, Florida State Title, to comply with IndyMac Bank's closing instructions, and Florida State Title's fraudulent and/or dishonest handling of IndyMac Banks funds and/or documents, in connection with the above-mentioned loan closing."  CPL Claim Letter  (DE# 54-16, 6/22/14).

The FDIC claims that April 3, 2014 is when the FDIC first discovered the facts that the closing agent failed to follow IndyMac's closing instructions relating to

2

enforceability of IndyMac's liens, and committed fraud and/or dishonesty regarding IndyMac's funds or documents in closing the transactions.  April 3, 2014 is when the FDIC received documents from the title agent's bank pursuant to an administrative subpoena *duces tecum*. Pl.'s Motion at 4, n.1 (DE# 59, 7/2/15). The FDIC alleges that the defendant breached the terms of the CPL and that the FDIC is entitled to indemnification for all losses purportedly suffered by IndyMac on the Segal Loans. The FDIC alleges that its claim of loss was due to the closing agent's disbursement of $193,000 to J.R. Financial Holdings, LLC ("J.R. Financial"), a third party entity who had no lien on the property, was not a borrower in the transaction, and was not a seller in the transaction, and the fact that Maria Segal did not contribute $41,611.04 of her own money at the closing.  See Second Amended Complaint, ¶¶ 23-24 (DE# 27, 2/6/15). In its Statement of Claim, the FDIC alleges a net total loss of $765,239.38 on the first loan.  The loss is the difference between the sum of the unpaid principal balance, plus accrued interest, taxes, insurance and other expenses, minus adjustment, less the sale proceeds from the foreclosure of the Property.  See Ex. 13, Pl.'s Response to Def.'s SOF (DE# 54-13, 6/22/15).  The Statement of Claim on the second loan reveals a net total loss of $190,78.94. See Ex. 14, Pl.'s Response to Def.'s SOF (DE# 54-14, 6/22/15).

The parties filed cross-motions for summary judgment.  The FDIC seeks summary judgment or alternatively, partial summary judgment on the following grounds: 1) Chicago Title's liability for the FDIC's breach of contract claims; (2) the amount of recoverable damages under each claim; and (3) Chicago Title's defenses of lack of timely notice, standing and comparative negligence.  Pl.'s Motion (DE# 44, 6/4/15).

The defendant seeks summary judgment on the following grounds: 1) neither the FDIC nor its predecessor, IndyMac, gave the defendant notice of a CPL claim within ninety (90) days from the date of discovery of its claim of loss; 2) the title agent did not violate the terms of the closing instructions in any manner that implicated the CPL; 3) the title agent did not cause IndyMac's or the FDIC's losses; 4) the CPL expired by its terms as to the second mortgage at issue in this action upon satisfaction of that mortgage; and 5) the FDIC and IndyMac did not give the defendant notice of its liability or a reasonable opportunity to perform under the CPL before it commenced this action. Defendant's Motion (DE# 44, 6/4/15).

Because the issues of whether the FDIC gave the defendant timely notice of its CPL claim regarding the Segal Loans and whether the defendant must show prejudice to reduce liability under the CPL  are case dispositive, the undersigned will address the timeliness ground first and the prejudice ground second.  If the CPL claim is untimely and prejudice is not required, the defendant cannot be liable under the CPL and the parties' remaining grounds for summary judgment are moot.

## FACTUAL BACKGROUND

The central facts in this case are not in dispute. Pl.'s Reply (DE# 59, 7/2/15). The undisputed facts are taken from the defendant's Statement of Facts ("SOF") (DE# 45, 6/4/15).  Pertinent facts that the FDIC disputes or partially disputes are indicated as such.   Maria Segal applied for two mortgage loans for the purchase of a property located at 604 Sunnyside Court, Fort Myers, Florida (the Property).  Defendant's Statement of Facts ("Def.'s SOF") ¶ 1 (DE# 45, 6/4/15).  On or about August 21, 2007, IndyMac made two loans totaling $855,000 ("Segal Loans") to Ms. Segal pursuant to

4

her loan applications: a first mortgage loan in the amount of $675,000 and a second mortgage loan in the amount of $180,000 (collectively, the "Segal Loans"). Ms. Segal represented and warranted in writing that the Property would be her primary residence. Def.'s SOF ¶ 3.  Before it funded the Segal Loans, IndyMac received a title commitment that showed that two mortgages encumbered the Property: a $421,190 mortgage to Lehman Brothers Bank and a $70,000 mortgage to Fifth Third Bank, Florida.  Before it funded the loans, IndyMac received draft closing statements on Form HUD-1 that showed that Ms. Segal would be paying $41,611.04 at closing.  Ms. Segal and the closing agent, Florida State Title, represented in that closing statement that $423,000 would be used to pay off a first mortgage on the Property and $193,000 would be used to pay off a second mortgage on the Property. Def.'s SOF ¶ 4.  The FDIC disputes that $193,000 was used to pay off a second mortgage and instead, asserts that the closing agent disbursed the amount to JR Financial Holdings, LLC ("JR Financial"), a third party entity with no valid lien or rights to the funds.   Plaintiff's Response to Defendant's Statement of Material Facts in Support of Motion for Summary Judgment ("Pl.'s Response to Def.'s SOF ¶ 4) (DE# 54, 6/22/15).

In connection with the Segal Loans, IndyMac purchased from the defendant's predecessor in interest, Ticor Title, two title insurance policies guaranteeing against certain defects in title to the Property and also was issued a CPL indemnifying IndyMac against certain defalcations by the closing agent. Def.'s SOF ¶ 5.  The subject CPL, in a form mandated by state law,[1] provided in pertinent part:

---

[1] In Florida, the terms of CPLs are legislatively mandated.  See Fla. Stat. § 627.786. Section 627.786 provides that title insurers may provide CPLs "in form and content approved by

When title insurance of [defendant]("Company") is specified for your protection in connection with closings of real estate transactions in which you are to be ... a lender secured by a mortgage (including any security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closing when conducted by such Issuing Agent ... when such loss arises out of:

1.  Failing of said Issuing Agent ... to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you ..., or (c) the collection and payment of funds due you, or

2.  Fraud or dishonesty of said Issuing Agent ... in handling your funds or documents in connection with such closing.

Closing Protection Letter, Def.'s SOF, Exhibit 11 (DE# 45, 6/4/15).

The CPL identified the "Issuing Agent" as Florida State Title and also provided, in

its "Conditions and Conclusions" that:

D. Claims of loss shall be made promptly to the Company at its principal office ... When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.  The Company shall not be liable hereunder unless notice of loss in writing is received by the Company within ninety (90) days from the date of discovery of such loss.

Id.

In the closing instructions for the Segal Loans (the "Closing Instructions"), the

"Lender" is IndyMac and IndyMac instructed the closing agent *inter alia* to close the

Loans only upon receipt of certain documents, to disclose any suspicions of fraud, and

to report to it secondary financing and payees not disclosed in the closing instructions,

---

the department." Id.  Section 690-186.010 of the Florida Administrative Code prescribes the form and content of CPLs. Fla. Admin. Code § 690-186.010.

loan application, and/or Form HUD-1.  Def.'s SOF ¶ 8.  The Closing Instructions also provided that the funds received from IndyMac will be disbursed in accordance with IndyMac's instructions.  Id.

Ms. Segal defaulted on the Loans without making a single payment. Def.'s SOF ¶ 9; Ex. 1; Complaint ¶ 25).  On December, 19, 2007, less than four months after the closing, Ms. Segal's attorney, Bonnie Canty, called IndyMac and stated that the Loans were "fraudulent."  Def.'s SOF ¶ 9, Ex. 15: IndyMac servicing notes at 1.  Thereafter, Ms. Segal repeatedly told IndyMac that the Loans were fraudulent and that she had allowed others to "use her credit" to buy the Property.  On February 2, 2008, Ms. Segal called IndyMac to explain that the transaction was fraudulent and that the Property was bought in her name by someone else who offered her money to participate in the transaction.  Def.'s SOF ¶ 10.  On February 5, 2008, an IndyMac representative called Ms. Segal, who told the IndyMac representative that the loan account was fraudulent and that an investor used her credit and that she was told the investor would be making the payments on the loans.  Id. On February 7, 2008, Ms. Segal again told IndyMac that she had used her credit to allow an investor to buy the house and was not aware the investor had failed to pay the mortgage until recently.  Id.

On or about May 22, 2008, IndyMac received a letter and accompanying documents from Anthony Rodriguez, another attorney for Ms. Segal.  Def.'s SOF ¶ 11. Among the accompanying documents was a February 21, 2008 letter from Ms. Segal in which she stated that she "bought the property ... as an investment" by a broker who said "they" had a client who would rent the house.  Id.  The accompanying documents also included copies of Ms. Segal's tax returns for 2005 and 2006, which showed that

she made $31,413.33 and $43,407.22 in 2005 and 2006, respectively, not the $223,140.64 and $226,378.25 reflected on the Forms W-2 she had submitted to IndyMac before the closing.  Id.

The FDIC took over IndyMac in or about July 2008.  It sold the Segal Loans Loans and other assets to One West Bank in 2009. Def.'s SOF ¶ 12 (DE# 45, 6/4/15). IndyMac commenced a foreclosure action against Ms. Segal in 2008 and obtained a judgment of foreclosure on the Property in or about May 2011.  Def.'s SOF ¶ 13; See In Rem Final Judgment of Foreclosure, Pl.'s Response to Def.'s SOF (DE# 54-13, 6/24/15).  In July 2011, IndyMac obtained an appraisal and a "broker's price opinion" of the Property, which estimated the Property's value to be $235,000 and $189,900, respectively. Def.'s SOF ¶ 13, Ex. 22 and 23 (DE# 45, 6/4/15).   In August 2011, the second mortgage on the Property was satisfied and in September 2011, IndyMac executed and recorded a satisfaction of that mortgage.  Id.  In September 2011, the Property was sold at a loss.

The FDIC disputes that IndyMac had knowledge in 2008 that the Segal Loans were "riddled with fraud", or that IndyMac knew that Ms. Segal was a straw buyer who contributed no money to the purchase of the Property, or that IndyMac knew that $193,000 paid at closing was not used to pay off a second mortgage on the Property. Pl.'s Response to Def.'s SOF ¶ 14 (DE# 54, 6/22/15).   The FDIC disputes the remainder of the facts asserted in paragraph 14 on the grounds that the facts are immaterial, including the following facts: 1) neither IndyMac nor the FDIC provided defendant or its predecessor with notice of the claim and loss until June 13, 2014; 2) the defendant responded with an acknowledgment of the claim and request for

documents and information on June 25, 2014, and the FDIC did not provide any of the requested documents or information to the defendant or its predecessor, but instead filed this action two weeks later on July 9, 2014.  Def.'s SOF ¶ 14; Pl.'s Response to Def.'s SOF ¶ 14 (DE# 54, 6/22/15).

The following additional facts are taken from the plaintiff's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment against Defendant Chicago Title Insurance Company ("Pl.'s SOF) (DE# 46, 6/4/15).  As Receiver of IndyMac, the FDIC is conferred by statute the power to issue pre-litigation "administrative subpoenas."  Pl.'s SOF ¶ 24 (citing 12 U.S.C. § 1818(n) and 12 U.S.C. § 1821(d)(2)(I), as amended).  The defendant disputes the FDIC's statement that "[t]he FDIC-R learned of facts giving rise to entitlement to indemnification under the Closing Protection Letter related to the Subject Loans, no sooner than when it received Florida State Title's bank records from Bank of America in response to its administrative subpoena *duces tecum*, sent to the FDIC-R on or about April 3, 2014."  Pl.'s SOF ¶ 25; Defendant Chicago Title Insurance Company's Statement of Controverted Facts in Opposition to Plaintiff's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment (Def.'s SOCF ¶ 25; DE# 51, 6/22/15).

## DISCUSSION

I.      **Standard of Review for Summary Judgment under Rule 56**

The parties filed cross-motions for summary judgment.  When ruling on a motion for summary judgment, the Court must look to Federal Rule of Civil Procedure 56(a), which states that "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." FED. R. CIV. P. 56(a).

The moving party bears the burden of proof on a motion for summary judgment. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying these portions of the pleadings, depositions, answers to interrogatories, and admissions on file . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted).

Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. See Adega v. State Farm Fire & Cas. Ins. Co., No. 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23.  Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete

10

failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-23.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

II.   **Defendant's Motion for Summary Judgment**

A.   Untimely Notice

The CPL requires a claimant to give notice of an indemnity claim within 90 days of discovery of facts that reveal a claim.  In the present case, the CPL expressly provided in pertinent part:

> The Company shall not be liable hereunder unless notice of loss in writing is received by the Company within ninety (90) days from the date of discovery of such loss.

CPL, Def.'s SOF, Ex. 11 (DE# 45, 6/4/15).

The defendant argues that the FDIC's CPL claim is untimely because IndyMac knew that the loan transactions were fraudulent and that the closing agent allegedly mishandled them by March 2008, at the latest, because the title commitment that IndyMac received before the loan closing showed that the second mortgage was only $70,000, not anywhere near $193,000; Ms. Segal defaulted without making a single payment; and Ms. Segal and her lawyers repeatedly told IndyMac that the loan was fraudulent and that she did not pay any money toward the purchase of the Property. The defendant argues that these facts reveal that Ms. Segal was a "straw buyer" and that her loan application and supporting documents contained misrepresentations.

11

Def.'s SOF ¶ 11.  Additionally, the defendant argues that IndyMac knew that it had suffered losses, that is, Ms. Segal's default and the substantial under-collateralization of the Segal Loans, when the Property was appraised at approximately $235,000 in July 2011.  In September 2011, after obtaining a judgment of foreclosure, IndyMac sold the Property at a loss for $241,000.

The FDIC claims that IndyMac and it first discovered the facts regarding a CPL claim on the Loans, on or about April 3, 2014, when the FDIC received documents from Bank of America, the closing agent's bank, in response to the FDIC's subpoena *duces tecum.* Pl.'s SOF ¶ 25; Pl's Motion for Summary Judgment at n.1 (DE# 59, 7/2/15) . Thus, the FDIC argues that it's June 13, 2014 notice of the CPL claim to the defendant was timely.

In a recent unpublished decision, the Eleventh Circuit held that "the closing protection letters require the FDIC to provide written notice within ninety days of discovering facts that reveal a claim." <u>FDIC v. First Am. Title Ins. Co.</u>,[2] No. 13-15058, 2015 WL 1906139, at * 8 (11th Cir. April 28, 2015) (unpublished) (citing <u>FDIC v. Attorneys' Title Ins. Fund, Inc.</u>,[3] No. 1:12-cv-23599-PAS, 2013 WL 4384270, at *5 (S.D. Fla. Sept. 3, 2014) (Seitz, J.) (other citations omitted)).  In <u>Property Transfer (Appeal)</u>, the Eleventh Circuit affirmed the summary judgment in favor of the FDIC based on

---

[2]The undersigned adopts the FDIC's shorthand reference "<u>Property Transfer (Appeal)</u>" for the Eleventh Circuit's decision in <u>FDIC v. First Am. Title Ins. Co.</u>, No. 13-15058, 2015 WL 1906139, at * 8 (11th Cir. April 28, 2015) (unpublished).

[3]The undersigned adopts the FDIC's shorthand reference "<u>WaMu</u>" for Judge Seitz's decision in <u>FDIC v. Attorneys' Title Ins. Fund, Inc.</u>, No. 1:12-cv-23599-PAS, 2013 WL 4384270, at *5 (S.D. Fla. Sept. 3, 2014) (Seitz, J.).

timely notice.  The Eleventh Circuit held that "[u]ntil the discovery of facts that reveal a

claim, the insured cannot confirm that a loss is a 'covered' loss under a closing

protection letter.  Therefore, the closing protection letters require the FDIC to provide

written notice within ninety days of discovering facts that reveal a claim." Property

Transfer (Appeal), 2015 WL 1906139, at *8 at *8 (citing WaMu, 2013 WL 4384270, at

*5  (other citations omitted)).  The Eleventh Circuit further held that "First American

must controvert the FDIC by proving an earlier source of information, a proof First

American failed to deliver."  Id.

      In WaMu, the district court  granted summary judgment in the defendant's favor

on eight of the fourteen transactions due to the untimeliness of the CPL claim and

granted summary judgment in favor of the FDIC on six of the fourteen transactions that

the court found to be timely.  WaMu, 2014 WL 4384270, at *5-6.  "Timely notice is a

condition precedent to ATIF's indemnity obligation [under the CPL]."  "The phrase 'the

date of discovery of such loss' includes not only the date of discovery of actual loss, but

also when the indemnitee has knowledge of specific acts giving rise to a claim covered

by the CPL."  Id. at *5 (quoting FDIC v. Property Transfer Services, No. 12-80533-cv,

2013 WL 5535561 at *8 (S.D. Fla. Oct. 7, 2013)).

      Under a CPL, "a lender is entitled to indemnification if the closing agent (1) failed

to comply with instructions relating to enforceability of the mortgage lien, the requirement

to obtain documents, or the requirement to disburse funds properly, or (2) committed

fraud or acted dishonestly in handling [the lender's] funds or closing documents."

WaMu, at *5. "[I]f [the lender] or the FDIC failed to give notice to [the title insurer] that it

sought indemnification under the CPL within 90 days of learning either of an agent's

failure to follow closing instructions or of an agent's fraudulent or dishonest conduct such that [the title insurer's indemnification obligation would be triggered, [the title insurer] is not liable." Id. at *6. "The 90 day notice requirement is a 'bright line,' meaning that prejudice is irrelevant outside of the 90-day notice period." Id. (citation omitted). "CPL liability for an agent's violation of the closing instructions does not require proof of the agent's knowledge or intent, it only requires a showing that ... the closing instructions were violated." Id. at * 7.

Because the court found that "[the bank] or the FDIC knew more than 90 days before making the CPL claim either of: (a) an undisclosed second mortgage at closing, meaning the agent did not follow closing instructions, or (2) knew facts that the loss arose out of an agent's fraud or dishonesty," the court granted summary judgment in favor of the defendant on eight of the fourteen transactions.[4] WaMu, 2014 WL 4384270, at *6.

The FDIC relies on the portion of WaMu that granted summary judgment in favor of the FDIC on six of the fourteen transactions. In WaMu, the district court specifically found that the following statement in a lender's loan-servicing notes was "vague" and "is not evidence of broker Aubrey Rudd's misconduct in the closing such that would give

---

[4]For example, on the 1501 and 1505 Fort Lauderdale properties, the district court in WaMu determined that the lender discovered the title agent's fraud in October 2007 when an attorney for the seller notified the lender's counsel about fraud. Additionally, the lender's attorney sent a letter to the title insurer in December 2007 notifying the title insurer that it had a duty to defend the lender's interests in the foreclosure of the 1501 property, following the borrower's default. The title insurer was entitled to summary judgment on the untimeliness of the CPL claims for those properties. WaMu, 2014 WL 4384270 at *6.

[the lender] knowledge of a CPL claim:" "[T]he buyer said] that this is a fraud ... He gave

them his power of attorney, said that he is working with the FBI Christina Shepard."

<u>WaMu</u>, 2014 WL 4384270 at *8, n.7.

   The defendant argues that the FDIC is entitled to summary judgment because

IndyMac and its successor, the FDIC, "knew or should have known" of the facts giving

rising to its potential CPL claim more than 90 days before it submitted its notice of

claim.  Def.'s Reply, p. 3 (DE# 60, 7/2/15).  The defendant relies on <u>WaMu</u> and Judge

Huck's Order on the defendant's motion for summary judgment in <u>FDIC v. Attorneys'</u>

<u>Title Insurance Fund, Inc.</u>, No. 10-21197-CIV-Huck/Bandstra, at p. (DE# 164, 5/17/11)

(S.D. Fla. May 17, 2011)(slip opinion)("IndyMac").  In <u>WaMu</u>, the court found that

"WaMu 'knew or should have known' that there was a second mortgage on the property

at the time of closing" based on a document entitled "Evidence of Personal Property

Insurance" that WaMu received as part of the closing package, which disclosed

National City Bank as a second mortgagee.  <u>WaMu</u>, 2013 WL 4384270, at * 7.  In

<u>IndyMac</u>, the court concluded that the notice was untimely based on IndyMac's "Fraud

Recovery and Loss Mitigation Report" which contained findings that the transaction at

issue was riddled with misrepresentations, including that the borrower was a straw

buyer, and the transaction was a flip.  There were no specific findings of closing agent

fraud.  The <u>IndyMac</u> court concluded that based on the Report, the "bank knew of the

misrepresentations that occurred in connection with the closing" along with the fact that

IndyMac was aware that its collateral was greatly under-collateralized. <u>IndyMac</u>,  No.

10-21197-CIV-Huck/Bandstra, Order at 11.

   The FDIC argues that "knew or should have known" is the wrong standard to

trigger the 90 day notice period.  Yet, the FDIC concedes that "the only question is whether IndyMac was in possession of information showing the closing agent acted in a way that was covered by the [CPL]."  Pl.'s Response at 8 (DE# 53, 6/22/15).  The FDIC then argues that the closing agent's misconduct giving rise to coverage was not known until the FDIC received the bank records of the closing agent's escrow account on April 3, 2015.  Id.  The undersigned finds that the FDIC was in possession of information that revealed that the closing agent violated IndyMac's closing instructions more than 90 days before it provided notice of its CPL claim.

In the present case, the record evidence reflects that IndyMac and the FDIC had notice of facts that revealed a CPL claim years before the FDIC sent the CPL claim letter to the defendant in June 2014.  Communications from the buyer and her attorneys in late 2007 and early 2008 revealed to IndyMac that Ms. Segal was a straw buyer, not a bona fide purchaser as required by the closing instructions.  The information is revealed in IndyMac's servicing notes and correspondence. The undersigned finds the following facts triggered the 90-day notice provision of the CPL:

1.   The draft closing statements on Form HUD-1 showed that Ms. Segal would be paying $41,611.04 at closing and that $423,000 would be used to pay off a first mortgage on the Property and $193,000 would be used to pay off a second mortgage on the Property.  Before it funded the Segal Loans, IndyMac received a title commitment that showed two mortgages encumbered the Property: a $421,190 mortgage to Lehman Brothers Bank and a $70,000 mortgage to Fifth Third Bank.  Def.'s SOF ¶ 4.

2.   Ms. Segal defaulted on the loans without making a single payment.

16

3.      Less than four months after the closing, on December 19, 2007, Bonnie

Canty, a lawyer for Ms. Segal called IndyMac and stated that the Loans

were "fraudulent."  IndyMac's servicing notes at page 1.  (DE# 45, Ex. 6).

4.      On February 2, 2008, Ms. Segal called IndyMac to explain that the

transaction was fraudulent and that the Property was bought in her name

by someone else who offered her money to participate in the transaction.

(DE# 45, Ex. 15).

5.      On February 5, 2008, an IndyMac representative called Ms. Segal and

again, Ms. Segal told the IndyMac representative that the loan account

was fraudulent and that an investor used her credit and that she was told

that the investor would be making payments on the Loans.  (DE# 45, Ex.

15; servicing notes at p. 389).

6.      On February 7, 2008, Ms. Segal told IndyMac that she had used her credit

to allow an investor to buy the house and was not aware that the investor

had failed to pay the mortgage until recently.  Id.

7.      Ms. Segal's lawyer, Anthony Rodriguez, sent a letter to IndyMac on or

about May 22, 2008, which enclosed copies of Ms. Segal's tax returns for

2005 and 2006, which showed that she made $31,413.33 and $43,407.22

in 2005 and 2006, respectively, not the $223,140.64 and $226,378.25

reflected on the Forms W-2 she had submitted to IndyMac before the

closing.  (Def.'s SOF  ¶ 11).

8.      In 2008, IndyMac commenced a foreclosure action on the Property.  In

July 2008, the FDIC became IndyMac's receiver. In May 2011, IndyMac

17

obtained an In Rem Final Judgment of Foreclosure against Ms. Segal and the Property.  Def.'s SOF ¶ 13; See In Rem Final Judgment of Foreclosure, Pl.'s Response to Def.'s SOF (DE# 54-13, 6/24/15).

9.     In July 2011, the FDIC received appraisals for the Property that were well below the value of the Loans.

10.     In September 2011, the Property was sold at a loss for $241,000.

IndyMac's servicing notes contain details of fraud, not vague statements of fraud.  The defendant argues, and the undersigned agrees, that these facts reveal that IndyMac was in possession of information that disclosed that Ms. Segal was a straw buyer who, in contravention of the Closing Instructions, did not pay $41,611.04 at the closing with her own money as reflected in the HUD-1.  Id.  Additionally, the HUD-1 revealed that the a pay off in the amount of $193,000, substantially greater than the $70,000 reflected in the title commitment.  The FDIC attempts to minimize the significance of this discrepancy by arguing that the pay off amounts can be greater at closing than the amounts reflected in the title commitment.   While the pay off amounts may be slightly higher at closing due to the additional accrual of interest, taxes and other expenses, in the present case, the increase was more than double the estimated amount of $70,000 of the second mortgage reflected in the title commitment.  At the latest, the undersigned finds that IndyMac and the FDIC were in possession of facts revealing an actual loss in July 2011.  The combination of the facts regarding Ms. Segal's straw buyer status and the actual loss due to under-collateralization of the Segal Loans in July 2011, triggered the CPL ninety (90) day notice provision.

To be timely, IndyMac or the FDIC was required to provide notice of the CPL

18

claim to the defendant by October 2011 at the latest.  The FDIC provided notice in June

of 2014.  Although the FDIC claims it could not have discovered the payment to a third

party, JR Financial Institution, LLC, until it received the bank documents in response to

the FDIC's administrative subpoena in April 2014 and thus, it's CPL claim is timely, the

undersigned is unpersuaded.  The FDIC's CPL claim notice is untimely.

       B.    <u>Prejudice</u>

       The FDIC argues that the defendant misreads and misapplies the CPL's

prejudice provision.  Pl.'s Motion at 3 (DE# 59, 7/2/15).  The CPL provides in pertinent

part:

> D. Claims of loss shall be made promptly to the Company at its principal
> office ... When the failure to give prompt notice shall prejudice the
> Company, then liability of the Company hereunder shall be reduced to the
> extent of such prejudice.  The Company shall not be liable hereunder
> unless notice of loss in writing is received by the Company within ninety
> (90) days from the date of discovery of such loss.

Closing Protection Letter, Def.'s SOF, Exhibit 11 (DE# 45, 6/4/15).  The FDIC further

argues that the CPL does not include the "could have or should have" discovered

standard that the defendant suggests.  The FDIC distinguishes <u>U.S. Bank Nat'l Ass'n v.</u>

<u>First Am. Title Ins. Co.</u>, No.2:10-cv-503, 2012 WL 1080876 (M.D. Fla. Mar. 30, 2012), a

case cited by the defendant to support its position that it is entitled to summary

judgment due to untimely notice.  The FDIC argues that <u>U.S. Bank</u> held the defendant

liable despite the untimely notice.  The <u>U.S. Bank</u> court engaged in a lengthy analysis

aimed at the extent of prejudice suffered by the defendant due to the plaintiff's late

notice.  <u>Id.</u> at *5.  Ultimately, the <u>U.S. Bank</u> court reduced the amount of the

defendant's liability after considering specific evidence of prejudice that the defendant

19

provided to the court.

The undersigned rejects the FDIC's position that the defendant must show prejudice regarding untimely notice or that the cure for untimely notice is a reduction in the defendant's liability. See Pl.'s Motion at 3-4. A plain reading of the CPL language makes clear that "[T]he Company shall not be liable hereunder unless notice of loss in writing is received by the Company within ninety (90) days from the date of discovery of such loss." Pl.'s SOUF, Ex. 4 at ¶D. "The 90-day notice requirement is a 'bright line,' meaning that prejudice is irrelevant outside of the 90-day period." WaMu, 2014 WL 4384270, at *6 (citation omitted)). This sentence of the CPL is not contingent upon prejudice. If the notice is not received by the Company within ninety (90) days of the discovery of facts and actual loss giving rise to a CPL claim, then the defendant is not liable. Because the undersigned finds the FDIC's CPL claim notice is untimely, the prejudice provision of the CPL is inapplicable.

C.    The Parties' Other Grounds for Summary Judgment

The defendant's additional grounds for summary judgment include the following: 1) the FDIC cannot establish that any alleged breach by the closing agent caused IndyMac's losses; 2) the FDIC lacks any admissible evidence that the closing agent acted with intent to deceive required by the CPL; 3) because CPL liability is coextensive with the title insurance policy, the satisfaction of the $180,000 second mortgage terminates CPL coverage for that mortgage; and 4) the FDIC breached its implied covenant of good faith and fair dealing by providing a "boilerplate" claim letter and failing to give the defendant responsive documents and an opportunity to investigate the claim before the FDIC filed this action.

20

The FDIC seeks summary judgment or alternatively, partial summary judgment on the following grounds: 1) Chicago Title's liability for the FDIC's breach of contract claims; (2) the amount of recoverable damages under each claim; and (3) Chicago Title's defenses of lack of timely notice, standing and comparative negligence.  Pl.'s Motion (DE# 44, 6/4/15).

Because the undersigned finds that the untimeliness of the FDIC's CPL claim is dispositive and prejudice is not required, the FDIC's motion for summary judgment should be DENIED as to its third ground regarding the defendant's lack of timely notice defense. There is no need to address the merits of the defendant's additional grounds for summary judgment or the FDIC's remaining alternative grounds for summary judgment.

<u>CONCLUSION</u>

The date of discovery of both the actual loss and facts giving rise to potential coverage under both of the CPL provisions was more than ninety (90) days before the FDIC's provided its June 13, 2014 CPL claim letter to the defendant. The undersigned finds that the FDIC's CPL claim is untimely and is barred.  This Court should grant summary judgment in favor of the defendant and against the FDIC on its cross-motion for summary judgment on the issue of untimeliness.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, the undersigned

RESPECTFULLY RECOMMENDS that the Defendant Chicago Title's Motion for Summary Judgment and Supporting Memorandum of Law (DE# 44, 6/4/15) be

GRANTED in part as to its first ground regarding untimely notice.  The undersigned further

RESPECTFULLY RECOMMENDS that the  Plaintiff Federal Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B.'s Motion for Summary Judgment or Partial Summary Judgment against Defendant Chicago Title Insurance Company (DE# 47, 6/4/15) be DENIED in part as to its third ground regarding the defendant's untimely notice defense.

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Judge Moreno, United States District Court Judge.   Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); See Also, RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 5th day of August, 2015.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Court Judge Moreno
All counsel of record

22